

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

November 12, 2024

**BY ECF AND EMAIL**
The Honorable John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Troy Carter*, 24 Cr. 310 (JGK)

Dear Judge Koeltl:

    The defendant in this case, Troy Carter, is scheduled to be sentenced on November 20, 2024, at 11:30 a.m., having pleaded guilty to Count One of Information 24 Cr. 310 (JGK) (the "Information"), which charged Carter with possessing ammunition after a felony conviction, in violation of Title 18, United States Code, Sections 922(g)(1) and 2. The parties have stipulated to an applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 10 to 16 months' imprisonment (the "Guidelines Range"). For the reasons set forth below, the Government submits that a bottom of the Guidelines sentence of 10 months' imprisonment is warranted.

    **I.**    **The Investigation and Offense Conduct**

    A.    *The Parcel Deliveries*

    On February 16, 2024, the United States Postal Service ("USPS") halted the delivery of a particular parcel addressed to the defendant because, from a tear in the parcel's packaging, the parcel appeared to contain a gun. (PSR ¶¶ 8-10.) Law enforcement personnel subsequently obtained a search warrant to open the parcel and, upon executing the warrant, discovered that the parcel contained a Smith & Wesson .40 caliber handgun, with a serial number that appeared to be altered, and a box containing 50 .40 caliber Federal Ammunition cartridges. (*Id.* ¶¶ 14-15.) When the parcel was not delivered as scheduled, the defendant called USPS multiple times to inquire about the status of the delivery. (*Id.* ¶¶ 11-12.) When asked by a USPS employee to describe the contents of the parcel, the defendant stated that the parcel contained "mechanic parts." (*Id.* ¶ 11.)

Hon. John G. Koeltl                                                                                                       Page 2
November 12, 2024

Through querying a USPS database, law enforcement personnel determined that, on February 10, 2024, and December 21, 2023, other packages were delivered to the defendant from the same sender who sent the parcel that was intercepted on February 16, 2024. (*Id.* ¶¶ 16-18.) Those packages were broadly similar in weight to the intercepted parcel. (*See id.* ¶¶ 9, 17-18.)

### B.  *The Defendant's Illegal Possession of Ammunition on February 23, 2024*

On February 23, 2024, law enforcement personnel conducted a search of the defendant's residence pursuant to a search warrant. (*See id.* ¶¶ 19-21.) During the search, law enforcement discovered, in two dresser drawers in the defendant's bedroom, approximately 175 rounds of ammunition, including 50 .38 caliber Special PMC cartridges, 50 9 mm Remington cartridges, 50 10 mm CCI Blazer cartridges, and 25 .410 caliber American Tactical buckshot cartridges, all of which had been manufactured outside of New York State.[1] (*See id.* ¶¶ 21-22.) During the search, after the defendant was advised of his *Miranda* rights and stated that he understood those rights, the defendant acknowledged that he possessed ammunition in his residence. (*Id.*)

At the time of the search, the defendant was prohibited from possessing ammunition because he knew he had previously been convicted of a felony. Specifically, the defendant had been convicted of four New York state felonies: (1) attempted murder, for which the defendant was sentenced, in 1995, to a term of 6 to 12 years' imprisonment; (2) robbery in the third degree, for which the defendant was sentenced, in 1995, to a term of 2 to 4 years' imprisonment (concurrent with the attempted murder sentence described above); (3) criminal possession of stolen property in the third degree, for which the defendant was sentenced, in 1991, to a term of 5 years' probation; and (4) attempted robbery in the second degree, for which the defendant was sentenced, in 1991, to a term of 5 years' probation. (*See* PSR ¶¶ 24-27, 46, 47, 49, 50.)

### II.     Procedural History, Guilty Plea, and Applicable Guidelines Range

On February 23, 2024, the defendant was charged in a one-count Complaint with possessing ammunition after a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 2. The defendant was presented before the Honorable Sarah L. Cave on that same date, and ordered released on conditions that included home detention, which was later modified to a curfew on June 12, 2024 (Dkt. 19), and which location restriction was removed altogether on August 8, 2024 (Dkt. 26). The defendant has complied with his pretrial conditions of release. (*See* PSR ¶ 6.)

On May 20, 2024, the defendant waived indictment and pleaded guilty, pursuant to a plea agreement (the "Plea Agreement"), to a one-count Information, charging him with the same count charged in the Complaint, *i.e.*, possession of ammunition after a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 2. The Plea Agreement and the U.S. Probation Office ("Probation") agree on the Guidelines calculation. Pursuant to U.S.S.G. § 2K2.1, the base offense level for the offense is 14. (PSR ¶¶ 5, 34.) After a two-level deduction for acceptance of responsibility, the defendant's total offense level is 12. (*Id.* ¶¶ 5, 41-42.) The defendant has seven prior convictions

---

[1] Law enforcement also discovered, in the same bedroom, a Buckstalker .50 caliber black powder rifle and an airsoft revolver, neither of which constitutes a "firearm" as defined under 18 U.S.C. § 921(a)(3).

Hon. John G. Koeltl  Page 3
November 12, 2024

(excluding two fare-evasion convictions), the most recent of which was a 2004 conviction for menacing in the second degree, resulting in a sentence of time served and an order of protection; however, due to the date of the defendant's prior convictions, the defendant has no criminal history points and is therefore in Criminal History Category I. (*Id.* ¶¶ 5, 42-54.) Accordingly, the defendant's Guidelines Range is 10 to 16 months' imprisonment. (*Id.* ¶¶ 5, 96.)

In a sentencing memorandum filed on November 6, 2024, the defendant requests a supervisory sentence. Probation recommends a below-Guidelines sentence of 5 months' imprisonment. (*See* PSR at 26.)

### III.  Applicable Law

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone. Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)–(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Hon. John G. Koeltl                                                                                                           Page 4
November 12, 2024

### IV. <u>Discussion</u>

The defendant, at the age of 54, illegally possessed 175 rounds of ammunition of varying calibers, and attempted to receive a gun – which had an altered serial number – and additional ammunition in the mail.[2] While the defendant's actions would ordinarily warrant a sentence that is at least within, if not higher than, the Guidelines Range of 10 to 16 months' imprisonment, there are several compelling and unusual mitigating circumstances in this case, as described below. Balancing those circumstances against the defendant's conduct and criminal history, a bottom of the Guidelines sentence of 10 months' imprisonment, to be followed by a three-year term of supervised release, is sufficient but not greater than necessary to achieve the purposes of sentencing.

*First*, a significant sentence is necessary to reflect the seriousness of the defendant's conduct, to promote respect for the law, and to provide just punishment. The defendant's crime—possession of ammunition after a felony conviction—is by its nature a serious offense. *See United States v. Sapp*, No. 2 Cr. 1065 (NGG), 2007 WL 1232073, at *3 (E.D.N.Y. Apr. 26, 2007) ("Defendant's conduct was extremely serious. When a felon possesses a gun, the public is put at significant risk. The fact that Congress has enacted a specific criminal statute that provides serious penalties for such conduct reflects this significant risk."); *cf. United States v. Brown*, 690 F. App'x 774, 775 (2d Cir. 2017). Here, the defendant possessed 175 rounds of ammunition, and attempted to obtain additional ammunition and a gun, which had an altered serial number, in the mail. Although the defendant initially told law enforcement, in sum and substance, that he believed he could possess the ammunition in light of Supreme Court case law (PSR ¶ 21), the defendant, in fact, knew that his conduct was wrong and illegal; indeed, he attempted to conceal the true contents of the parcel that was intercepted on February 16, 2024, by falsely telling USPS that it contained "mechanic parts." (*Id.* ¶ 11; *see also* May 20, 2024 Plea Transcript, Dkt. 22, at 29 (defendant's allocution acknowledging that he knew it was wrong and illegal to possess ammunition at the time he did so).) Moreover, while law enforcement does not know the defendant's motivation for his conduct, either the defendant possessed a large quantity of ammunition and attempted to possess a gun for himself, or he intended to distribute some or all of it to others. In either scenario, the defendant's conduct was undoubtedly dangerous. *See generally United States v. Dillard*, 214 F.3d 88, 93 (2d Cir. 2000) (observing that "[p]ossession of a gun greatly increases one's ability to inflict harm on others"). In short, the defendant's serious conduct warrants a meaningful incarceratory sentence.

---

[2] Regardless of whether the defendant's attempt to possess a gun and additional ammunition constitutes "relevant conduct" under the Sentencing Guidelines, such conduct is properly considered when applying the Section 3553(a) factors. *See, e.g.*, *United States v. Wernick*, 691 F.3d 108, 119 (2d Cir. 2012) ("Our conclusion that [the defendant's acts] are not technically 'relevant conduct' to the specific offense charged in [the indictment] does not imply that those acts are not highly relevant (in a non-technical sense) to the district court's evaluation [of the Section 3553(a) factors]."); *see also, e.g.*, *United States v. Yaghmour*, No. 22-678, 2023 WL 4504462, at *2 (2d Cir. July 13, 2023) (similar).

Hon. John G. Koeltl                                                                                                   Page 5
November 12, 2024

*Second*, a substantial sentence is necessary to achieve adequate deterrence. As to specific deterrence, the defendant has nine prior convictions, including four prior felony convictions. The defendant served over six years in prison from 1995 to 2001 for attempted murder (during which the defendant fired a gun, *see* PSR ¶ 49) and, in part, for robbery in the third degree; however, neither that sentence nor the defendant's other sentences of supervision or time served deterred him from engaging in the instant offense.

The Government acknowledges that the defendant committed his last felony offense before the instant offense over thirty years ago, in 1993, when the defendant was 23 years old, and (apart from a fare-evasion conviction in 2007) it appears that the defendant was law-abiding from 2005, when he was released from his two-month parole revocation sentence, until he committed the instant crime earlier this year. The Government also recognizes that the defendant has fully complied with his pretrial conditions of release, and promptly turned over several rounds of ammunition that law enforcement neglected to remove from his apartment during their search. (*See* Def. Sub. at 4.) Nevertheless, the defendant's decision to re-engage in serious criminal conduct at the age of 54, despite the consequences for both him and his family of doing so, is highly concerning, and suggests that the defendant still poses a risk of recidivism.

*Third*, general deterrence also counsels in favor of an incarceratory sentence. As this case demonstrates, individuals who have been convicted of felony offenses can be highly motivated to obtain guns, including through unregulated means such as the mail. Whether they do so to possess the guns and ammunition themselves or to sell to others, the illegal possession of ammunition and guns – and the ordering of such items via the mail – is a significant and dangerous problem, and an incarceratory sentence is warranted to convey to others who might engage in such conduct that they will face serious consequences if they do so.

*Fourth*, the Government acknowledges the mitigating circumstances in this case. As described more fully in the PSR, the defendant is the sole caretaker for his ten-year-old daughter (*see* PSR ¶¶ 68-69), and also appears to be the primary caretaker for his mother, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see* Def. Sub. at 1-2; PSR ¶ 59). In addition, the defendant experienced a difficult and at times traumatic childhood (*see* PSR ¶ 63), and ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* PSR ¶ 74; Def. Sub. at 4-5.) Furthermore, while pre-trial compliance with the law is expected in every case, the Government notes that the defendant has fully complied with his pretrial conditions of release (including, for several months, strict conditions of home detention and then a curfew) since his arrest almost nine months ago. The Government submits that a bottom of the Guidelines sentence of 10 months' imprisonment would appropriately balance the mitigating factors set forth by the defendant against the seriousness of the defendant's criminal conduct and the other relevant sentencing factors discussed above.[3]

---

[3] With respect to the defendant's argument concerning MDC conditions (Def. Sub. at 5), the Government understands that the Bureau of Prisons ("BOP") is not currently designating inmates to the MDC. *See* https://www.bop.gov/resources/pdfs/mdc_bro_des_fact_sheet.pdf?v=1.0.0 ("The Federal Bureau of Prisons has paused initial designation of individuals to serve their terms of imprisonment at MDC Brooklyn . . . ."). If the defendant is sentenced to an incarceratory term, the Government will work with defense counsel to provide the BOP with any documentation it

Hon. John G. Koeltl  Page 6
November 12, 2024

### V. Conclusion

For the reasons set forth above, the Government respectfully submits that a bottom of the Guidelines sentence of 10 months' imprisonment, followed by a three-year term of supervised release with the mental health and search special conditions set forth in the PSR, is appropriate.[4] The Government further requests that, when imposing judgment, the Court incorporate the final order of forfeiture previously docketed at Docket No. 30, requiring the defendant to forfeit the ammunition that was seized from his residence during the February 23, 2024 search.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for
the Southern District of New York

By: _____
Adam Z. Margulies
Assistant United States Attorney
(212) 637-2345

cc: Christopher Flood, Esq. (via ECF and email)

---

requires to designate the defendant to a facility ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. In addition, the Government would not object to permitting the defendant to surrender at his designated facility, which would allow the defendant additional time to transition care for the defendant's daughter and mother while the defendant serves his sentence.

[4] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same).